# EXHIBIT A

# SUMMONS

| | |
|---|---|
| Attorney(s)  Jeremy M. Glapion | **Superior Court of New Jersey** |
| Office Address  1704 Maxwell Drive | |
| Town, State, Zip Code  Wall, NJ 07719 | |
| Telephone Number  (732) 455-9737 | Union           COUNTY |
| Attorney(s) for Plaintiff  Elaine Johnson | Law              DIVISION |

Elaine Johnson, et al.

Docket No: L-002070-18

Plaintiff(s)

Vs.
Moore Holdings, LLC

## CIVIL ACTION SUMMONS

Defendant(s)

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/pro se/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf.

*Michelle M. Smith*
Clerk of the Superior Court

DATED: 06/15/2018

Name of Defendant to Be Served: Renewal by Andersen

Address of Defendant to Be Served: 70 Jackson Drive Suite A Cranford, NJ 07016

Revised 11/17/2014, CN 10792-English (Appendix XII-A)

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION
UNION COUNTY

| | |
|---|---|
| ELAINE JOHNSON, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>MOORE HOLDINGS, LLC d/b/a RENEWAL BY ANDERSEN,<br><br>Defendant. | Civil Case No.:<br><br>CLASS ACTION COMPLAINT |

## INTRODUCTION

1. This action arises out of Defendant Moore Holdings, LLC d/b/a Renewal by Andersen of N.J./N.Y. Metro's ("Defendant" or "RBA") practice of placing autodialed telemarketing calls to individuals in the absence of prior express written consent, and in the absence of any "do not call" policy or training, in violation of two separate provisions Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

2. Despite not having such a policy or conducting this training, as required by law prior to making telemarketing calls, Defendant has placed numerous autodialed calls to Plaintiff's cellular telephone.

3. Plaintiff Johnson has done no business with Defendant and has never provided Defendant prior express written consent to place calls to her cellular telephone.

4. Accordingly, Plaintiff brings this TCPA action on behalf of herself and a class of similarly situated individuals under 47 U.S.C. § 227(b) and 47 U.S.C. § 227(c).

## PARTIES

5. Plaintiff is, and at all times mentioned herein was, a citizen and resident of Hillside,

New Jersey.

6. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

7. Defendant is, and at all times mentioned herein was, a New Jersey corporation headquartered at 70 Jackson Dr., Suite A, Cranford, NJ 07016.

8. Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

## FACTUAL ALLEGATIONS

9. Defendant has placed telephone calls to Plaintiff's cellular telephone number ending in 6203.

10. Plaintiff initially reached out to Defendant via telephone after seeing one of its television advertisements to inquire about whether Defendant did work on basement windows.

11. After Defendant told Plaintiff it did not, or words to that effect, Plaintiff proceeded to wind down the conversation and the Parties parted ways.

12. Over the following months, Defendant proceeded to call Plaintiff dozens of times to advertise its other services.

13. Plaintiff never told Defendant it could call her about its services.

14. Defendant continued to call Plaintiff after she asked Defendant to stop and told Defendant that she was not interested.

15. Defendant's calling practices did not just affect Plaintiff. The internet is full of complaints about unwanted calls from Defendant. For example, on the site 800notes.com[1], there are complaints such as:

---

[1] https://800notes.com/Phone.aspx/1-908-497-1020

- "[I] answer and they hang up." – nicki, December 30, 2009

- "[E]very other day they call me and then hang up when I answer." – pattib, March 6, 2010

- "They are relentless. I have told them to stop calling, I am not interested, but they continue to call." – joanne, June 1, 2010

- "Keep calling even when I told them I'm not interested." – Galinkaloidsy, May 17, 2011.

16. On another version of the same page for telephone number 908-858-5853 (one of Defendant's telephone numbers), on June 15, 2017, one person complained of "[d]ead air."[2]

17. The following complaints can be found on one of Defendant's Yelp pages[3]:

- An individual named Susan S. wrote in August 2014 that "Renewal continued to call almost every other day … despite the fact I have told them to take me off their call list[.]"

- An individual named Cheney M wrote in July 2015 "[t]hese people have been calling relentlessly" after being told not to call.

- An individual named Greg M. wrote in September 2015 "[a]fter several attempts to be taken off their calling list we still receive calls."

- An individual named Chris H. wrote in December 2017 "2 or 3 times a day we get calls pushing their Damn windows. Even though we've told them to stop calling, they call and call and call. Next call will result in a police report."

---

[2] https://800notes.com/Phone.aspx/1-908-858-5853

[3] https://www.yelp.com/biz/renewal-by-andersen-cranford?q=call

18. On another of Defendant's Yelp pages,[4] the following complaints can be found:

- An individual named Angela S. wrote in 2016 "I have received multiple calls from them regarding my 'interest.' Each time I tell them to remove me from their list. Still receiving calls."

- An individual identified as k f. wrote that Defendant had been harassing him with telephone calls. Remarkably, this individual followed up on his review in 2018, writing "this vile company has been calling me again! ... My phone rings several times a day because of this awful company who is trying to get my business through sheer harassment."

19. On Defendant's Google review page, an individual named "D J" wrote "harassing phone calls won't stop ... and they will not remove me from their call list despite numerous requests."

20. Larry L., identified as the owner of this business,[5] responded to several of these complaints and apologized, dating back to 2015, meaning he was on notice of Defendant's flawed call policies.

21. Each of Defendant's calls to Plaintiff appeared to use an automatic telephone dialing system.

22. Specifically, the calls contained a lengthy and unnatural pause from the time the call was answered to the time one of Defendant's representatives came on the line.

23. Many of the calls resulted in "dead air" or a hang up when Plaintiff picked up.

24. Further, Defendant's calls used a different representative each time.

---

[4] https://www.yelp.com/biz/renewal-by-andersen-farmingdale?q=call
[5] Presumably this is Larry Landes, who, per public records, is the owner of Defendant's "Renewal by Andersen" branch.

25. This behavior is indicative of a system that automatically dials telephone numbers in bulk, and then seeks to automatically match "connected" calls to an available representative. In other words, an automatic telephone dialing system.

26. Some of Defendant's telephone calls also used a prerecorded or artificial voice.

27. Plaintiff is aware that these telephone calls used a prerecorded or artificial voice message because of her familiarity with normal human interaction, intonation, manners of speaking, and her inability to engage the prerecorded or artificial voice in reciprocal, sensical communication or banter.

28. These calls were all telemarketing, as they were intended to convince Plaintiff to buy products from Defendant. For example, the calls discussed Defendant's various replacement window services and products and offered those services and products to Plaintiff.

29. Because the calls constitute telemarketing, Defendant was required to obtain prior express written consent from the persons to whom they made calls using an automatic telephone dialing system or prerecorded voice.

30. "Prior express written consent" is specifically defined by statute as:

[A]n agreement, in writing, bearing the signature of the person called <u>that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice</u>, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

31. Plaintiff never told Defendant it could call her, let alone provide Defendant the type of consent sufficient to qualify as "prior express written consent".

32. Defendant never disclosed to Plaintiff that it may or would call Plaintiff, or that it may or would call Plaintiff using an automatic telephone dialing system or prerecorded voice.

33. Defendant never solicited Plaintiff's consent (in writing or otherwise) to make calls

to her using an automatic telephone dialing system or prerecorded voice.

34. Accordingly, each of Defendant's calls to Plaintiff using an automatic telephone dialing system or prerecorded voice violated 47 U.S.C. § 227(b).

35. For violations of 47 U.S.C. § 227(b), Plaintiff is entitled to $500 to $1500 per call.

36. In addition, the TCPA prohibits making "any call for telemarketing purposes" unless the caller has instituted certain minimum standards with respect to persons who request not to receive telemarketing calls (regardless of equipment used or consent obtained).

37. These standards include, among others, keeping a written policy, available upon demand, for maintaining a do-not-call list, and training personnel engaged in telemarketing on the existence and use of the do-not-call list. 47 CFR § 64.1200(d):

38. At the time of its calls to Plaintiff, Defendant did not have such a written policy, nor did it train personnel engaged in telemarketing on the existence and use of the do-not-call list.

39. Plaintiff, directly and through her counsel, has requested Defendant's do not call policy, but has been told that there was no policy that could be provided.

- On or about June 5, 2018 at or around 1:00 PM eastern, Plaintiff, through her counsel spoke via telephone with a representative and asked for Defendant's "do not call" policy. The representative asked Plaintiff's counsel to hold while he spoke to his manager. Shortly thereafter, Plaintiff's counsel was transferred to a woman named Lissette Mayes, who identified herself as an Inside Sales Director for Defendant. Ms. Mayes stated that she could not provide the "do not call" policy, and that while the company tries to honor "do not call" requests, sometimes things get missed.

- On or about June 6, 2018, Plaintiff spoke via telephone with an individual

- named Jefferson, who stated that there was no policy that he could send Plaintiff.

- On or about June 8, 2018 at 11 AM, Plaintiff, through her counsel, called Marie Palumbo, Director of Marketing for Defendant, to discuss the situation and request a "do not call" policy. Plaintiff's counsel was unable to reach Ms. Palumbo and requested a call back, but, at the time of filing, has not heard back.

- On June 11, 2018 at around 10:00 am, Plaintiff's counsel spoke with Defendant's counsel William Raney via telephone and again requested Defendant's "do not call" policy. Plaintiff followed up by email at 10:37 am to reiterate the request. On June 14, Mr. Raney produced a policy, but metadata indicated that the provided document was created on June 11. While this is not dispositive of the creation date of the policy, it may indicate that the policy was not created until Defendant faced the threat of litigation.

40. Thus, even if Defendant did have a such a policy in place at the time of the calls, Defendant's failure and refusal to produce that policy make it not "available upon demand".

41. As for training, Defendant's calling practices (as detailed above), and refusal to produce a "do not call" policy, strongly indicate the lack of training.

42. However, more concretely, one of Defendant's former employees wrote on January 9, 2018 on indeed.com "The training – There's none. They hand you a binder and tell you to memorize it and practice with each other or go home and practice with your wife."[6]

43. Accordingly, all of Defendant's telemarketing calls to anyone, in the absence of such a policy and in the absence of training on such a policy, and regardless of consent or

---

[6] https://www.indeed.com/cmp/Renewal-By-Andersen/reviews?id=05dac0027ff4cd1c

equipment used, violate 47 U.S.C. § 227(c).

44. While the exact number of calls to Plaintiff's cellular telephone number will be determined in discovery, Plaintiff has received more than two such telemarketing calls in a 12-month period.

45. Plaintiff is entitled to up to $500 for each call placed to her cellular telephone in violation of 47 U.S.C. § 227(c), separate from and in addition to the damages allowed for 47 U.S.C. § 227(b).

46. Plaintiff is entitled to $1,500 per call for violations of § 227(c) if the Court finds that the violations were knowing and/or willful.

47. Plaintiff has suffered actual injury because of Defendant's unwanted and untrained telemarketing telephone calls, including, but not limited to:

- Device storage;
- Data usage;
- Lost time tending to and responding to the unsolicited calls;
- Invasion of Privacy;
- Nuisance;
- Deprivation of the right to request, receive, and act in accordance with the mandated "do not call" policy to stop further calls.

48. These forms of actual injury are sufficient for Article III standing purposes.

## CLASS ACTION ALLEGATIONS

49. Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of two proposed Classes, defined as follows:

> Since June 6, 2014, Plaintiff and all persons to whose cellular telephones Defendant placed (or had placed on its behalf) a telemarketing telephone call using identical,

or substantially identical, equipment as the equipment used to place telemarketing telephone calls to Plaintiff.

("B Class")

Since June 6, 2014, Plaintiff and all persons within the United States to whose telephone number Defendant placed (or had placed on its behalf) two or more telemarketing telephone calls in a 12-month period.

("C Class")

50. Excluded from the Classes are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

51. The Members of the Classes for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

52. The exact number and identities of the persons who fit within the Classes are ascertainable in that Defendant maintains written and electronically stored data showing:

    a. The time period(s) during which Defendant placed its telephone calls;

    b. The telephone numbers to which Defendant placed its telephone calls;

    c. The telephone numbers for which Defendant had prior express written consent;

    d. The purposes of such calls;

    e. The names and addresses of Class members.

53. The Classes are comprised of hundreds, if not thousands, of individuals nationwide.

54. There are common questions of law and fact affecting the rights of the Members of the Classes, including, *inter alia*, the following:

    a. Whether Defendant maintained a written "do not call" policy;

b. Whether Defendant trained its employees or agents engaged in telemarketing on the existence and usage of any "do not call" policy;

c. Whether Defendant obtained prior express written consent;

d. Whether Defendant placed telephone calls using an automatic telephone dialing system or artificial or prerecorded voice;

e. Whether Plaintiff and the Classes were damaged thereby, and the extent of damages for such violations; and

f. Whether Defendant should be enjoined from engaging in such conduct in the future.

55. Plaintiff Johnson is a member of the Classes in that Defendant placed two or more calls for telemarketing purposes in a one-year period to her telephone number without having a written "do not call" policy in place or training its personnel on the existence and use of any such "do not call" policy, and these calls used an automatic telephone dialing system and/or prerecorded voice.

56. Plaintiff's claims are typical of the claims of the Members of the Classes in that they arise from Defendant's uniform conduct and are based on the same legal theories as these claims.

57. Plaintiff and all putative Members of the Classes have also necessarily suffered actual damages in addition to statutory damages, as all Members of the Classes spent time tending to Defendant's unwanted calls, lost space on their devices, and suffered a nuisance and an invasion of their privacy as they were unable to effectively stop the calls if they wanted to do so, or obtain a "do not call policy" upon which they could rely to stop the calls.

58. Plaintiff has no interests antagonistic to, or in conflict with, the Classes.

59. Plaintiff will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent themselves and the Classes.

60. Defendant has acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

61. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

62. A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

63. Common questions will predominate, and there will be no unusual manageability issues.

## FIRST CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii)
### (On Behalf of Plaintiff and the B Class)

64. Plaintiff and the proposed B Class incorporate the foregoing allegations as if fully set forth herein.

65. Defendant placed calls to Plaintiff's and B Class Members' telephone numbers without prior express written consent.

66. Plaintiff's and B Class Member's telephone numbers are assigned to a cellular telephone service.

67. As alleged, these calls all used an "automatic telephone dialing system."

68. Some of these calls used an artificial or prerecorded voice.

69. The calls were not placed for "emergency purposes" as defined by 47 U.S.C. § 227(b)(1)(A)(i).

70. Plaintiff and B Class Members are entitled to an award of $500 in statutory damages for each call, pursuant to 47 U.S.C. § 227(b)(3)(B).

71. Plaintiff and B Class Members are entitled to an award of treble damages in an amount up to $1,500 for each call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(b)(3).

### SECOND CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(c)
### (On Behalf of Plaintiff and the C Class)

72. Plaintiff and the proposed C Class incorporate the foregoing allegations as if fully set forth herein.

73. Defendant placed numerous calls for telemarketing purposes to Plaintiff's and C Class Members' telephone numbers.

74. Defendant did so despite not having a written policy pertaining to "do not call" requests.

75. Defendant did so despite not having such a policy available "upon demand."

76. Defendant did so despite not training its personnel on the existence or use of any internal "do not call" list.

77. Plaintiff and C Class Members each received two or more calls in a 12-month period.

78. Plaintiff and C Class Members are entitled to an award of $500 in statutory damages telephone call pursuant to 47 U.S.C. § 227(c)(5).

79. Plaintiff and C Class Members are entitled to an award of treble damages in an amount up to $1,500 telephone call, pursuant to 47 U.S.C. § 227(c)(5).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Johnson, individually and on behalf of the Classes, prays for the following relief:

A.   An order certifying the Classes as defined above, appointing Plaintiff Johnson as the representative of the Classes and appointing her counsel as Class Counsel;

B.   An order declaring that Defendant's actions, as set out above, violate 47 U.S.C. § 227(b) and (c);

C.   An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

D.   An award of statutory damages for violations of 227(c);

E.   An award of treble damages;

F.   An award of reasonable attorneys' fees and costs; and

G.   Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

**Dated:** June 15, 2018

s/ Jeremy M. Glapion
Jeremy M. Glapion
**THE GLAPION LAW FIRM, LLC**
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: 732.455.9737
Fax: 732.709.5150
jmg@glapionlaw.com

# Civil Case Information Statement

## Case Details: UNION | Civil Part Docket# L-002070-18

Case Caption: JOHNSON ELAINE VS MOORE HOLDINGS, LLC
Case Initiation Date: 06/15/2018
Attorney Name: JEREMY M GLAPION
Firm Name: GLAPION LAW FIRM
Address: 1704 MAXWELL DR
WALL NJ 07719
Phone:
Name of Party: PLAINTIFF : Johnson, Elaine
Name of Defendant's Primary Insurance Company (if known): Unknown

Case Type: OTHER Telephone calls w/o consent and w/o proper policies
Document Type: Complaint with Jury Demand
Jury Demand: YES - 6 JURORS
Hurricane Sandy related? NO
Is this a professional malpractice case? NO
Related cases pending: NO
If yes, list docket numbers:
Do you anticipate adding any parties (arising out of same transaction or occurrence)? NO

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**
CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

Do parties have a current, past, or recurrent relationship? NO

If yes, is that relationship:

Does the statute governing this case provide for payment of fees by the losing party? NO

Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:

Do you or your client need any disability accommodations? NO
    If yes, please identify the requested accommodation:

Will an interpreter be needed? NO
    If yes, for what language:

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

06/15/2018
Dated

/s/ JEREMY M GLAPION
Signed